IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARY FRANCES HERKERT<br>4187 CARRS RIDGE RD<br>EDGEWATER, MD 21037<br><br>       Plaintiff,<br><br>       v.<br><br>DR. KILOLO KIJAKAZI, ACTING COMMISSIONER<br>SOCIAL SECURITY ADMINISTRATION<br>6401 SECURITY BOULEVARD<br>BALTIMORE, MD 21235<br><br>       Defendant. | Civil No. _____<br><br>(Jury Trial Requested) |

**COMPLAINT**

Plaintiff Francie Herkert ("Plaintiff"), by and through undersigned counsel, through her undersigned counsel of record, files this Complaint against Defendant, Dr. Kilolo Kijakazi, Acting Commissioner, Social Security Administration (hereinafter, referred to as "SSA", "Defendant", or "Agency") on the following grounds:

1.  This action is brought by the Plaintiff for damages against Defendant for discrimination on the bases of her disability and reprisal for Plaintiff's prior protected activity in violation of Section 501 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), as amended, 29 U.S.C. § 791 et seq.

**JURISDICTION AND VENUE**

1

2.     Plaintiff invokes this honorable Court's federal question jurisdiction pursuant to 42 U.S.C. §§ 2000e-5(f)(1) and (3), and 28 U.S.C. §§ 1331 and 1343.

3.     Plaintiff seeks declaratory and injunctive relief, expenses of litigation, including reasonable attorney's fees and costs.

4.     Venue is proper in this Court because the Plaintiff worked within the area encompassed by the United States District Court for the District of Maryland, pursuant to 28 U.S.C. § 1391.

## PARTIES

5.     Plaintiff is a citizen of the United States of America, and presently resides in Anne Arundel County, State of Maryland. Plaintiff submits herself to the jurisdiction of the United States District Court for the District of Maryland for any and all purposes related to or arising from the action within.

6.     At all times relevant to the facts alleged in this lawsuit, Plaintiff was employed by Defendant.

7.     Defendant is the official Agency head of the Social Security Administration; and thus, Defendant is subject to the jurisdiction of this Court.

8.     Defendant may be properly served with process by sending a copy of the summons and complaint by registered or certified mail to the civil-process clerk at the United States attorney's office for the District of Maryland, the Attorney General of the United States at Washington, D.C., and the head of the Agency.

9.     During all times relevant to this action, Defendant met the jurisdictional prerequisites for a claim under Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791.

10. Defendant, including its supervising personnel, officials, agents, officers, and employees were responsible for all acts complained of herein.

## PROCEDURAL HISTORY

11. Plaintiff initiated EEO contact in August 2017 and was issued a Notice of Right to File a Formal Complaint. Plaintiff submitted her formal complaint on December 17, 2017, which was investigated by the Agency.

12. After receiving the report of investigation on June 28, 2018, Plaintiff submitted a Hearing Request to the EEOC (EEOC Number 531-2019-00342X; Agency Number HQ-17-0895) on two issues:

> Whether Plaintiff was discriminated against on the basis of her disabilities, renal impairment, chronic kidney disease, impaired pulmonary function, hypertension, severe lumbar spondylosis and in reprisal for prior EEO activity and subject her to harassment on these same bases when:
>
> a. The Agency failed to provide her with a reasonable accommodation beginning on August 8, 2017; and
>
> b. On October 15, 2017, reassigned her from building manager to management analyst

13. On June 26, 2019, Defendant submitted a Motion for Summary Judgement. Plaintiff, through counsel, submitted her opposition to the Agency's Motion on July 11, 2019[1]. The Agency submitted a Reply to Plaintiff's Response to the Agency's Motion for Summary Judgement on July 16, 2019. The Agency's Motion was granted in part and denied in part.

---

[1] In Plaintiff's Opposition to the Agency's Motion for Summary Judgment, she withdrew her harassment claim from the case.

14. On December 4 and December 5, 2019, Administrative Judge Enechi Modu held a hearing. AJ Modu issued a decision finding no discrimination or retaliation on August 19, 2020, and the Agency issued its Final Agency Decision ("FAD") thereafter, received by Plaintiff on September 4, 2020.

15. On October 1, 2020, Plaintiff timely filed an appeal with the Office of Federal Operation (Appeal No. 2021000010) on the following issues:

Whether the AJ erred in finding that, based on disability (renal impairment, chronic kidney disease, impaired pulmonary function, hypertension, severe lumbar spondylosis) and reprisal (protected activity), the Complainant was not discriminated against and retaliated against as evidenced by the following events:

   a. On September 27, 2017, the Agency failed to provide Complainant with a reasonable accommodation.

   b. On October 15, 2017, Complainant was reassigned from Building Manager to Management Analyst.

   c. Since December 2015, the Agency failed to provide Complainant with a reasonable accommodation.

16. Plaintiff's Memorandum in Support of her appeal was filed on November 2, 2020.

17. Defendant's submitted a brief in opposition to Plaintiff's appeal on December 1, 2020.

18. On September 6, 2022, the Office of Federal Operations issued a Decision affirming the Agency's FAD implementing the AJ's Decision. Pursuant to 29 C.F.R. § 1614.407(c), Plaintiff is entitled to file a civil action.

## STATEMENT OF FACTS

19. From December 14, 2015 until October 15, 2017, Plaintiff was employed with the Agency as a Branch Chief/Building Manager. She served as the supervisor of the outlying buildings operations[2].

20. As a Branch Chief/Building Manager, Plaintiff's job duties included supervising six employees[3], interacting with the General Services Administration ("GSA")[4], representing SSA in negotiations with lessors, components, and Agency executives.

21. Prior to her employment with the Agency, Plaintiff was diagnosed with several disabilities, including severe renal impairment, pulmonary impairment, and spondylosis. Before officially onboarding with the Agency, Plaintiff requested to telework as a reasonable accommodation; an accommodation that had been granted at her previous employer.

22. Sandra Eddington, Division Director, OBM, served as Plaintiff's direct supervisor. Ms. Eddington was aware of Plaintiff's disability, because Plaintiff directly informed Ms. Eddington prior to Plaintiff's onboarding.

23. Kelly Barr, Deputy Director, OBM, served as Plaintiff's second line supervisor.

24. Ryan Felber, Office Director, OBM, served as Plaintiff's third line supervisor.

25. Ms. Barr and Mr. Felber were aware of Plaintiff's disability, because Plaintiff directly informed Ms. Barr and Mr. Felber. More specifically, Plaintiff had a surgery scheduled shortly after she had onboarded. The surgery was scheduled in February or March 2016. Plaintiff openly explained her medical condition to Ms. Barr and Mr. Felber and the need for surgery.

---

[2] Outlying buildings refers to the leased headquarters building as opposed to the government owned and self-managed headquarters buildings.

[3] Plaintiff had two employees at the Wabash building. Three employees at the Security West building and one employee who moved back and forth between the two buildings.

[4] Prior to joining SSA, Plaintiff worked at the General Services Administration ("GSA") as a Facility Services Manager.

26.     Plaintiff had a workstation at both the Wabash building and the Security West building. She spoke to her employees every day, but she did not see everyone on a daily basis, because she went between both buildings. However, she maintained contact with her staff via email.

27.     Throughout the duration of her time as Branch Chief/Building Manager, Plaintiff made several requests for telework. These requests were made verbally and via email to her supervisors.

28.     When Plaintiff teleworked, she interacted with her staff on a regular basis.

29.     On April 25, 2016, Ms. Eddington issued a positive mid-year evaluation of Plaintiff's performance. She did not raise any performance deficiencies.

30.     Ms. Eddington praised Plaintiff's interpersonal skills stating that she treats the public and her staff with fairness, communicates clearly, and maintains a good working relationship with her staff.

31.     On October 19, 2016, Ms. Eddington provided Plaintiff with an end of year evaluation. Plaintiff was rated as a successful contributor and Ms. Eddington wrote very positive comments throughout the document.

32.     On April 26, 2017, Ms. Eddington gave Plaintiff a positive mid-year performance appraisal with excellent comments.

33.     In the 2017 mid-year appraisal, Ms. Eddington stated "[m]ost admired is [Plaintiff's] ability to find effective solutions in challenging situations in just a short period of time with SSA." Plaintiff exceeded expectations for job knowledge and achieving business results. Her prior experience in the private sector and at GSA "distinguished herself above others." Plaintiff "produces her fair share of work. She handles and unravels work problems that

have been in existence for several years…" Plaintiff communicated expectations to her teams, provided on-going feedback and promoted teamwork. She "strives to ensure her team members give the best Customer Service and support they can."

34. In April 2017, Plaintiff completed the written mid-year evaluations in the Performance Assessment and Communication System ("PACS") for her employees.

35. On April 26, 2017, Plaintiff received her mid-year performance review. She was rated fully successful, and the review contained excellent comments from Ms. Eddington.

36. On July 17, 2017, Plaintiff had a discussion with Ms. Eddington regarding telework accommodations for continuing medical issues. Plaintiff offered to formally submit a request in writing through the Agency's Accommodation Wizard. Ms. Eddington advised that additional telework would be approved as needed. Ms. Eddington advised that a formal request was not necessary and approval for reasonable accommodation telework due to medical issues on as-needed basis.

37. In July 2017, Ms. Eddington nominated Plaintiff for the Excellence in Government Fellows Program after Plaintiff expressed interest. Ms. Eddington did not have to nominate an employee just because they volunteered.

38. On August 8, 2017, Ms. Eddington retracted the previous approval of telework due to medical issues without explanation. Plaintiff had requested telework for the day due to urgent kidney situation requiring evaluation. While Plaintiff felt fine and was able to work, due to symptoms she was experiencing, Plaintiff's doctor wanted to see her that day. Plaintiff had her laptop at home. Ms. Eddington denied the request for telework associated with disability and required Plaintiff to use annual leave or comp time.

39. On August 11, 2017, Plaintiff, via email, expressed concern over Ms. Eddington's denial to telework due to medical issues after previously approved. In an email response, Ms. Eddington said she was "disappointed" that Plaintiff pointed out denial of telework requested August 8, 2017, and pursued accommodation for telework. Ms. Eddington claimed that she has been "generous" with telework.

40. On August 14, 2017, Plaintiff requested to meet with Mr. Barr and/or Mr. Felber to discuss (1) Ms. Eddington's previously approved then rescinded request to telework as needed for medical issues, (2) request to telework 2 days per week for medical issues, (3) retaliation/hostile work environment by Eddington, and (4) restoration of leave that was exhausted due to continued denials of requests for reasonable accommodation telework.

41. On August 16, 2017, Ms. Eddington made it more difficult for Plaintiff to request comp time.

42. On August 21 and 22, 2017, Plaintiff met with Mr. Barr and Mr. Felber to discuss Ms. Eddington's denial of her request for reasonable accommodation. Mr. Felber denied Plaintiff's request for accommodation stating that it was an undue hardship on the Agency and that she could only use the standard work/life balance programs available to other employees.

43. On August 23, 2017, Mr. Felber sent an email summarizing the meeting he and Mr. Barr had with Plaintiff regarding her disability and reasonable accommodation request. There was no mention of performance issues.

44. On August 28, 2017, Plaintiff responded to Mr. Felber's August 23, 2017 email. Plaintiff stated she disagreed with reasons for denial and would continue to pursue/escalate her request for disability reasonable accommodation to telework (2 days per week) and would engage in EEO activity to pursue.

8

45. On August 29, 2017, Plaintiff escalated a disability reasonable accommodation request via the Agency's Reasonable Accommodation Wizard.

46. After Plaintiff escalated her disability reasonable accommodation request beyond the Office of Buildings Management and filed an EEO claim, Mr. Barr and Mr. Felber instructed Ms. Eddington to look back and identify potential issues with Plaintiff's performance that could possibly be cited as performance issues.

47. In mid-to-late August, Plaintiff provided PACS discussions to her remaining subordinates.

48. On September 12, 2017, Plaintiff met with Ms. Eddington regarding Plaintiff's late administration of mid-year PACS. Plaintiff had done the write-ups but did not administer them. She failed to appropriately prioritize it with her busy schedule and did not understand the consequences of failing to administer the PACS to her employees. At the meeting, Plaintiff explained what measures she put into place to ensure that it would not happen again. Ms. Eddington stated that she was satisfied with this response and the matter was closed.

49. On September 15, 2017, Plaintiff submitted a request for EEO Counseling for harassment, failure to approve reasonable accommodation, and hostile work environment.

50. On September 19, 2017, Agency Medical Officer Victor Hrehorovich made a determination that Plaintiff has a disabling condition within the current meaning of the Rehabilitation Act, and her condition warrants a reasonable accommodation. He also determined that the requested accommodation of 2 to 5 days per pay period was "reasonable and effective."

51. On September 27, 2017, Ms. Eddington, Mr. Barr, and Mr. Felber informed Plaintiff that she was being reassigned for performance problems. Plaintiff was informed that she was being removed from her supervisory position to non-supervisory position. The position that

she was being reassigned to was a contracts manager[5], non- supervisory position. At full performance, it was a GS-12. Job duties included overseeing the concessions and cafeteria contracts at Headquarters, not leased buildings.

52. This reassignment constituted a demotion because the new position was objectively worse; it was less prestigious, less interesting, and provided less room for advancement.

53. The position had less responsibility (no supervisory duties), limited subject matter, limited challenge and promotional potential. Furthermore, there was no guarantee in Mr. Felber's email that Complainant would not be subjected to expiration of grade retention or that the position description would be revised to ensure a permanent GS-13 level.

54. After the September 27, 2017 meeting, Plaintiff reached out to Jim Julian, her fourth level supervisor and supervising official over the Office of Buildings Management.

55. On October 2, 2017, Plaintiff met with Mr. Julian. She was offered a reassignment to GS-13 non-supervisory position in the Office of Realty Management. Mr. Julian made it clear that remaining in a supervisory position was not an option. Plaintiff reluctantly accepted the reassignment, because at least the reassignment would remove her from the hostile, harassing and retaliatory work environment in OBM and would remove the risk of expiration of grade retention.

56. At no time was Plaintiff placed on a performance assistance plan. She was not aware that her job was in jeopardy.

---

[5] Cheryl Murphy, one of Plaintiff's subordinates, who was scheduled to retire, previously held the position.

57. Plaintiff had no alleged performance issues prior to escalating the reasonable accommodation request beyond the Office of Buildings Management.

58. On October 12, 2017, Plaintiff had a performance appraisal meeting with Ms. Eddington. While the numerical rating was satisfactory, Ms. Eddington included extremely poor, disparaging, false and/or irrelevant comments.

59. On October 16, 2017, Plaintiff began working in the Office of Realty Management (ORM) as non-supervisory Management Analyst GS- 13. This reassignment was also a demotion. It was a non-supervisory management analyst position. It was a highly clerical position providing preliminary review of GSA occupancy agreements (OAs) received by regional offices, checking for proper documentation attached, attaching "sign here" stickers, forwarding to ORM management for signature, and transmitting signed OAs back to the regional offices. It was a step down, lacking in variety and responsibility and skill. It has lower prestige and less promotional potential.

60. On October 24, 2017, Jim Julian issued a reasonable Accommodation approval letter stating that reasonable accommodation was "approved by reassignment."

61. After Plaintiff's reassignment, Ms. Eddington took over Plaintiff's supervisory duties. Ms. Eddington works at the headquarters building and she remotely manages the buildings that Plaintiff used to oversee. At the time of the EEOC hearing in December 2019, this arrangement had been going on for at least two years.

62. Plaintiff engaged in protected EEO activity when she (1) requested a reasonable accommodation due to disability in 2015-16; (2) requested a reasonable accommodation in August 2017 and prior; and (3) initiated contact with an EEO counselor on September 15, 2017.

**COUNT ONE**

**Rehabilitation Act - Disability Discrimination**

63. Plaintiff re-alleges every allegation contained in this Complaint as if set forth fully herein.

64. Section 501 prohibits employment discrimination by federal departments and agencies against individuals with disabilities and requires affirmative action in the hiring, placing, and advancing of individuals with disabilities in the federal sector.

65. The Social Security Administration is an agency to which Section 501 of the Rehabilitation Act applies.

66. Plaintiff was and is an individual with a disability under Section 501 of the Rehabilitation Act.

67. Defendant regarded Plaintiff as disabled within the meaning of Section 501 of the Rehabilitation Act.

68. Plaintiff has a record of a disability within the meaning of Section 501 of the Rehabilitation Act.

69. Defendant violated Section 501 of the Rehabilitation Act by reassigning Plaintiff on the basis of her disability.

70. Plaintiff was fully qualified to be a Branch Chief/Building Manager and was able to perform all the essential functions of the position.

71. Defendant discriminated against Plaintiff on the basis of her disability by failing to provide reasonable accommodations to Plaintiff.

72. Defendant discriminated against Plaintiff on the basis of her disability by failing to engage in an interactive process to consider possible reasonable accommodations for Plaintiff to perform her essential job functions.

73. Defendant's actions were intentional, willful, and in reckless disregard of Plaintiff's rights under the Rehabilitation Act.

74. Plaintiff has suffered damages as a result of Defendant's unlawful actions.

75. Plaintiff is entitled to reasonable compensatory damages and attorneys' fees and costs.

## COUNT TWO
### Rehabilitation Act - Reprisal

76. Plaintiff re-alleges every allegation contained in this Complaint as if set forth fully herein.

77. Section 501 of the Rehabilitation Act provides protection against retaliation. Any individual, disabled or not, is protected from retaliation for exercising his or her rights. Retaliation occurs when an employee is punished for engaging in legally protected activity such as reporting discrimination.

78. An individual may not be subject to changes in the terms and conditions of his or her employment for reporting or complaining about possible discrimination and/or harassment.

79. Plaintiff requested a reasonable accommodation to telework based her disabilities.

80. Plaintiff made reasonable complaints about disability discrimination.

81. Defendant took adverse employment action against Plaintiff by reassigning Plaintiff's employment, while other employees, who did not have disabilities or records of disabilities or were not regarded as having disabilities, were allowed to continue in their roles and not reassigned to a lesser position.

82. At the time of Plaintiff's reassignment, she was performing her job at a fully successful level.

83. Defendant unlawfully discriminated against Plaintiff by reassigning her on the basis of her reasonable accommodation request and/or EEO complaint.

84. As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, a loss of wages and salary, employment benefits, career path opportunities, and expenses, in an amount to be proved at trial.

85. As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, generally physical, mental, and psychological damages in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, and emotional distress, in amounts within the jurisdictional limits of this Court, to be proved at trial

## COUNT THREE
### Rehabilitation Act - Failure to Accommodate

86. Plaintiff re-alleges every allegation contained in this Complaint as if set forth fully herein.

87. At all relevant times, Plaintiff was an individual with a qualified disability under the Rehabilitation Act who, with reasonable accommodation, could have performed the essential functions of her job as Branch Chief/Building Manager. However, as Plaintiff was subjected to continuing denials to be reasonably accommodated, harassment and retaliation from Defendant, Plaintiff's disability was exacerbated.

88. Plaintiff repeatedly requested telework as a reasonable accommodation from Defendant for her disability, but Defendant refused and failed to provide it or even to engage in the required interactive process to determine what if any reasonable accommodations were

available. Instead, Plaintiff was reassigned to a lesser position. Subsequent to her reassignment, Plaintiff's prior supervisor assumed Plaintiff's Branch Chief/Building Manager duties remotely.

89. Defendant violated the terms of the Rehabilitation Act by effectively denying Plaintiff her requested reasonable accommodations, not engaging in the required interactive process to arrive at a reasonable accommodation, and in not offering any other form of reasonable accommodation.

90. As a direct and proximate result of Defendant's actions in violating the Rehabilitation Act, Plaintiff has suffered, and continues to suffer, damages, including compensatory damages in the form of past and present personal injuries (including exacerbation of pre-existing medical conditions), severe emotional distress, mental anguish, humiliation, and loss of dignity.

## JURY DEMAND

91. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Francie Herkert, asks for judgment in her favor and against the SSA as follows:

   a. Issue a declaratory judgment that the SSA's actions violated the Rehabilitation Act of 1973;

   b. Make Plaintiff in all ways whole for losses suffered as a result of the SSA's actions, including, but not limited to, leave restoration and reinstatement to a supervisory position;

   c. Award Plaintiff compensatory damages in the maximum allowable amount;

   d. Award the costs and disbursements incurred in bringing this action;

e. Award reasonable attorneys' fees; and

f. Award further relief as the court deems just and proper.

                              Respectfully Submitted,

                              */s/ Francisco Mundaca*
                              Francisco Mundaca (MSB # 21701)
                              The Spiggle Law Firm
                              3601 Eisenhower Ave., Suite 425
                              Alexandria, Virginia 22304
                              Main: (202) 449-8527
                              Facsimile: (202) 517-9179
                              Email: fmundaca@spigglelaw.com

*Counsel for Plaintiff, Mary Herkert*