# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| MARY FRANCES HERKERT,<br><br>　　　Plaintiff,<br><br>v.<br><br>DR. KILOLO KIJAKAZI,<br>ACTING COMMISSIONER, SOCIAL<br>SECURITY ADMINISTRATION<br><br>　　　Defendant. | Civil Action No. 1:22-cv-03139-LKG<br><br>Dated:  March 11, 2024 |

## MEMORANDUM OPINION

### I.     INTRODUCTION

In this employment discrimination action, Plaintiff, Mary Frances Herkert, alleges that the Defendant, Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration ("SSA"), discriminated and retaliated against her upon the basis of disability, and failed to provide a reasonable accommodation, by reassigning her to a different position, in violation of Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791. *See generally*, ECF No. 1.  The Defendant has moved to dismiss this matter, or, alternatively, for summary judgment in his favor, pursuant to Fed. R. Civ. P. 12(b)(6) and 56.[1]  Def. Mem., ECF No. 16-1.  This motion is fully briefed.  ECF Nos. 16, 16-1, 17, 32.  No hearing is necessary to resolve the motion.  *See* L.R 106.5.  For the reasons that follow, the Court: (1) **GRANTS-in-PART** the Defendant's motion and (2) **DISMISSES** the complaint.

---

[1] The Court treats Defendant's motion as one for summary judgment pursuant to Fed. R. Civ. P. 12(d).

## II.     FACTUAL AND PROCEDURAL BACKGROUND[2]

### A.     Factual Background

Plaintiff, Mary Frances Herkert, alleges in this civil action that the Defendant, the Acting Commissioner of the SSA, discriminated and retaliated against her upon the basis of her disability, and failed to provide a reasonable accommodation, by reassigning her to a different position, in violation of Section 501 of the Rehabilitation Act. *See generally* ECF No. 1. Specifically, Plaintiff asserts the following claims against the Defendant in the complaint: (1) disability discrimination (Count I); (2) reprisal (Count II); and (3) failure to accommodate (Count III). ECF No. 1 at 11-15. As relief, Plaintiff seeks, among other things, certain declaratory relief and to recover monetary damages, attorney's fees and costs from the Defendant. *Id*. at 15-16.

Plaintiff's Employment with the SSA

As background, Plaintiff was employed as a building manager in the SSA's Office of Buildings Management ("OBM") from December 14, 2015, until October 15, 2017. *Id*. at ¶ 19. In this capacity, Plaintiff was responsible for the oversight of building management services for the SSA. ECF No. 16-1 at 2. Pursuant to the SSA's policy, the agency's building managers were generally allowed to telework one day per week, due to the in-office job responsibilities related to the position. *Id*.; Def. Ex. 1 (Affidavit of Ryan Felber) at 4.

Prior to accepting employment with the SSA, Plaintiff was diagnosed with multiple disabilities, including severe renal impairment, pulmonary impairment and spondylosis. ECF No. 1. at ¶ 21. Because of these medical conditions, Plaintiff requested permission to telework in addition to her scheduled telework day as a reasonable accommodation before onboarding at SSA. *Id*.

Plaintiff alleges that she received several positive work performance evaluations during her employment as a buildings manager. For example, Plaintiff alleges that her supervisor, Sandra Eddington, gave her a positive mid-year performance evaluation that praised her interpersonal skills on April 25, 2016. *Id*. at ¶ 29. Plaintiff also alleges that Ms. Eddington gave

---

[2] The facts recited in this memorandum opinion are taken from the Defendant's motion to dismiss and the Plaintiff's statement of facts. ECF Nos. 1, 16-1.

2

her a positive end-of-year performance evaluation on October 19, 2016. *Id*. at ¶ 31. In addition, Plaintiff alleges that Ms. Eddington gave her a positive midyear performance evaluation that highlighted her problem-solving skills on April 26, 2017. *Id*. at ¶ 32.

Plaintiff acknowledges that she made several requests to telework during her employment as a building manager for the SSA. *Id*. at ¶ 27. In particular, Plaintiff was granted approximately 256 hours of telework during the period of April 2016 to August 8, 2017. ECF No. 16-1 at 2-3; *see* Def. Ex. 3 (Affidavit of Sandra Eddington) at 4; *see also* Def. Ex. 4 (Eddington Deposition Transcript Excerpts) at 30:11-31:2.

On August 3, 2016, Plaintiff requested, and was approved, to work from home during the period of September 12, 2016, to September 30, 2016, with a return-to-work date of October 3, 2016. ECF No. 16-1 at 3; *see* Def. Ex. 7 (Pages from SSA Document Production) at SSA 446-448; *see also* Def. Ex. 9. Plaintiff ultimately returned to work on October 7, 2016, after the SSA approved her request to work from home for an additional four days. ECF No. 16-1 at 3*;* Def. Ex. 7 at SSA 391.

In October 2017, the SSA also approved a second request by Plaintiff to work from home during the period of October 2017 to November 2017. ECF No. 16-1 at 3; Def. Ex. 7 at SSA 414-415. Thereafter, in January 2017, Plaintiff became eligible for, and was approved for, scheduled telework. ECF No. 16-1 at 3; Def. Ex. 6 (Herkert Deposition Transcript Excerpts) at 75:2-4.

Plaintiff also requested, and was approved for, 409 hours of sick leave during the period of 2016 to 2017. ECF No. 16 at 4; Def. Ex. 7 at SSA 476-80. In addition, Plaintiff requested, and was approved for, 340.5 hours of annual leave during the period of 2016 to 2017. ECF No. 16-1 at 4; Def. Ex. 7 at SSA 476-80.

Plaintiff alleges that, in July 2017, she discussed her request for telework as a reasonable accommodation for continuing medical issues with Ms. Eddington. ECF No. 1 at ¶ 36. But, Plaintiff alleges that Ms. Eddington retracted approval for her request to telework, and that she required Plaintiff to use leave or compensation time instead, in August 2017. *Id.* at ¶ 38.

Plaintiff also alleges that she, subsequently, requested to speak with two other supervisors, Kelly Barr and Ryan Felber, to discuss the retraction of her request to telework on August 14, 2017. *Id*. at ¶ 40. Plaintiff alleges that she was denied telework as an accommodation during this meeting, due to "undue hardship on the Agency." *Id*. at ¶ 42. And

so, Plaintiff alleges that she informed Mr. Felber of her intention to engage in Equal Employment Opportunity ("EEO") activity related to her request for telework on August 28, 2017. *Id*. at ¶ 44.

Plaintiff's Work Performance Issues In 2017

Defendant maintains that Plaintiff began demonstrating poor work performance in April or May 2017. ECF No. 16-1 at 4; Def. Ex. 4 (Eddington Deposition Transcript Excerpts) at 37:6-9. In this regard, Defendant also maintains that Plaintiff's poor job performance included the following conduct: (1) Plaintiff failed to include Ms. Eddington on emails as requested; (2) Plaintiff took four months to gather certain information requested by the SSA's Office of General Counsel and she ultimately did not provide the requested information; (3) Plaintiff failed to timely review position descriptions for a management analyst position and a management assistant position; (4) Plaintiff failed to respond to a request to participate in new employee orientation in July 2017; (5) Plaintiff failed to approve credit card "micro" purchases that her subordinates made despite Ms. Eddington asking her to do so several times beginning in April or May 2017; (6) Plaintiff failed to timely obtain an estimate for new countertops in the Wabash building in January 2017, after being asked to do so; (7) Plaintiff failed to timely submit mid-year appraisals in 2017; and (8) Plaintiff struggled to interact in a positive way with colleagues, including Ron Bates and Alice Shank, among others. *See* ECF No. 16-1 at 4-6; Def. Ex. 4 (Eddington Deposition Transcript Excerpts) at 37:12-38:20, 42:16-21; Def. Ex. 6 (Herkert Deposition Transcript Excerpts) at 84:13-85:13, 86:19-88:15, 88:20-92:3 and 99:17-100:14; Def. Ex. 7 at SSA 120-129, 581; Def. Ex. 10; Def. Ex. 11 (Barr Affidavit) at 3.

On August 17, 2017, Ms. Eddington met with Plaintiff to discuss Plaintiff's job performance. ECF No. 16-1 at 6; Def. Ex. 13. In the notes for the meeting, Ms. Eddington states that:

> I am concerned with your ability to complete assignments by their due dates. I wanted to bring to your attention my concern and see if we can come develop and discuss some ways for you to meet important deadlines.…Together we should be able to help you meet the expectations for your performance.

*Id.* Ms. Eddington also included the concerns discussed above in Plaintiff's 2017 job performance appraisal. ECF No. 16-1 at 6; *see* Def. Ex. 14 at 11-14.

### Plaintiff's August 29, 2017, EEO Claim

On August 29, 2017, Plaintiff filed a disability claim with the SSA regarding her reasonable accommodation request. ECF No. 1 at ¶¶ 45-46. Plaintiff alleges that, thereafter, Ms. Barr and Mr. Felber instructed Ms. Eddington to search for potential issues with Plaintiff's work performance. *Id*. at ¶ 46.

On September 15, 2017, Plaintiff submitted a request for EEO counseling for harassment, failure to approve reasonable accommodation and hostile work environment. *Id*. at ¶ 49. On September 19, 2017, the SSA's medical officer, Victor Hrehorovich, determined that: (1) Plaintiff has a disabling condition qualified under the Rehabilitation Act; (2) her condition warrants a reasonable accommodation; and (3) telework for two to five days within a pay period is "reasonable and effective." *Id*. at ¶ 50.

### Plaintiff's 2017 Reassignment

On September 27, 2017, Plaintiff met with Ms. Eddington, Mr. Barr and Mr. Felber to discuss concerns about Plaintiff's work performance and the decision to reassign Plaintiff to a non-supervisory position as a management analyst in the OBM. ECF No. 16-1 at 9; *see* ECF No. 1 at ¶ 51. Plaintiff alleges that the proposed reassignment constituted a demotion and that the new position was "objectively worse" than her prior role. ECF No. 1 at ¶ 52. In this regard, Plaintiff contends that her new position had limited subject-matter and promotional potential, less responsibility, less prestigious and limited advancement opportunities. *Id*. at ¶¶ 52-53.

On October 2, 2017, Plaintiff met with Jim Julian, the SSA's Deputy Associate Commissioner, and Mr. Julian offered to reassign Plaintiff to the position of management analyst, a GS-13 non-supervisory position, in the SSA's Office of Realty Management. ECF No. 1 at ¶¶ 55. Plaintiff alleges that she reluctantly accepted this reassignment, because it would "remove her from the hostile, harassing, and retaliatory work environment in OBM," and guaranteed she would keep her pay grade. ECF No. 1 at ¶ 55. In an email that Plaintiff sent to Mr. Julian regarding this reassignment, Plaintiff states that:

> I'm very excited having the opportunity to participate in our national leasing initiatives. I'm most grateful to you for making it happen.

ECF No. 16-1 at 7; Def. Ex. 12.

5

Plaintiff began her new role as a management analysis for the Office of Realty Management on October 16, 2017. EFC No. 1 at ¶ 59. Plaintiff alleges that this new position was a demotion, because it was "highly clerical," "less prestigious," "less promotional potential," and "[lacked] in variety and responsibility and skill." *Id*.

Plaintiff's Standard Form 50 for this position reflects the SSA's decision to reassign her to the position without any change to her pay grade or salary. ECF No. 16-1 at 7; Def. Ex. 16. At the time of Plaintiff's reassignment, the building manager position had a GS-13, Step 2 pay grade, with a salary of $97, 956; the management analyst position also had a GS-13, Step 2 pay grade, with a salary of $97,956. *Id*. It is undisputed that Plaintiff's new position involved a non-supervisory role, and that Plaintiff was paid at the GS-13 pay grade. ECF No. 1 at ¶ 51; ECF No. 16-1 at 7. It is also undisputed that Plaintiff's new position offered the same pay grade, salary, and benefits as her prior position as a building manager for OBM. ECF No. 1 at ¶ 55; ECF No. 16-1; Def. Ex. 6 (Herkert Deposition Transcript Excerpts) at 113:17-114:4 (Plaintiff's deposition testimony acknowledging that the reassignment did not change her grade, salary, or benefits.).

<u>The Reasonable Accommodation Approval and Plaintiff's Promotion</u>

On October 24, 2017, after Plaintiff began her new job as a management analysis, the SSA granted her request for a reasonable accommodation by allowing Plaintiff to telework up to two days a week. ECF No. 16-1 at 7; Def. Ex. 17 (Letter from Mr. Julian to Plaintiff). The SSA also allowed Plaintiff to request one additional episodic telework day as necessary. ECF No. 16-1 at 7.

In November 2020, Plaintiff was promoted to the position of supervisory management analyst. ECF No. 16-1; *see* Def. Ex. 18 (SF-50 form showing promotion). This position involves a supervisory role. ECF No. 16-1 at 8. And so, Plaintiff is currently paid at the GS-14 pay grade. *Id.*

<u>Plaintiff's EEO Complaint</u>

Plaintiff filed a formal complaint with the EEOC on December 17, 2017. ECF No. 1 at ¶ 11. The Equal Employment Opportunity Commission ("EEOC") subsequently found no findings of discrimination or retaliation on August 19, 2020. *Id*. at ¶ 14. The EEOC issued a final agency decision on September 4, 2020. *Id.* After Plaintiff unsuccessfully appealed the decision, the EEOC's Office of Federal Operations affirmed the ruling on September 6, 2022. *Id*. at ¶¶ 15, 18.

### B.     Procedural Background

Plaintiff commenced this civil action on December 5, 2022.  ECF No. 1.  On July 28, 2023, Defendant filed a motion to dismiss, or, in the alternative, for summary judgment, pursuant to Fed. R. Civ. P. 12(b)(6) and 56, and a memorandum in support thereof.  ECF No. 16.

Plaintiff filed a response in opposition to Defendant's motion on August 18, 2023.  ECF No. 17.  Defendant filed a reply brief on November 17, 2023.  ECF No. 32.

Defendant's motion to dismiss having been fully briefed, the Court resolves the pending motion.

## III.   LEGAL STANDARDS

### A.  Fed. R. Civ. P. 12(d)

A motion to dismiss under the Federal Rule of Civil Procedure 12(b)(6) "must be treated as one for summary judgment" when "matters outside the pleadings are presented" to the Court. *See* Fed. R. Civ. P. 12(d).  The United States Court of Appeals for the Fourth Circuit has held, however, that documents are not considered to be matters outside of the pleadings if they are "explicitly incorporated into the complaint by reference," or are "integral to the complaint and there is no dispute about the document's authenticity."  *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### B.  Fed. R. Civ. P. 56

A motion for summary judgment filed pursuant to rule 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987*); Morrison v. Nissan Motor Co.*, Ltd., 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See United States v.*

7

*Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).  In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992).  But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim.  *See Celotex Corp.*, 477 U.S. at 322-23.  Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id*. at 323.  And so, for those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial.  *See Anderson*, 477 U.S. at 256.

In this regard, the Fourth Circuit has held that, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment."  *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir. 1997).  And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). In addition, conclusory assertions of a defendant's state of mind and motivation are not enough to withstand summary judgment. *Goldberg v. B. Green & Co*., 836 F.2d 845, 848 (4th Cir. 1988); *Foreman v. Weinstein*, 485 F. Supp. 2d 608, 612 (D. Md. 2007) ("[A] subjective, even if genuine, belief of discrimination will not shield a nonmoving plaintiff from a grant of summary judgment.").  Rather, a plaintiff must advance specific material evidentiary facts, not unsupported speculation.  *Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986).

### C. The Rehabilitation Act And Employment Discrimination Claims

The Fourth Circuit has held that "Rehabilitation Act claims for discrimination are reviewed under the *McDonnell Douglas* burden-shifting framework." *Hannah P. v. Coats*, 916 F.3d 327, 342 (4th Cir. 2019) (citations omitted).  "Under that framework, [Plaintiff] has the initial burden of establishing a *prima facie* case of discrimination," and "must show that: (1) she is disabled; (2) she was otherwise qualified for the position; and (3) she suffered an adverse employment action solely on the basis of her disability." *Id.* (citations omitted).  If a plaintiff is able to establish a *prima facie* case, the burden shifts to the defendant "to provide a legitimate,

8

nondiscriminatory reason for its conduct." *Id.* "If the defendant provides such a reason, the plaintiff 'bears the ultimate burden of persuasion' and 'must show by a preponderance of the evidence that the proffered reason was a pretext for discrimination.'" *Id.*

Generally, to establish a *prima facie* case of retaliation, a plaintiff must show that: (1) "she engaged in a protected activity;" (2) "her employer acted adversely against her;" and (3) "a causal relationship existed between the protected activity and the adverse employment activity." *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (addressing the elements of a retaliation claim in a Title VII case).  If plaintiff successfully states a *prima facie* case for retaliation, "the burden shifts to the employer 'to rebut the presumption of retaliation by articulating a legitimate nonretaliatory reason for its actions.'" *Smith*, 12 F.4th at 416 (4th Cir. 2021) (quoting *Rhoads v. FDIC*, 257 F.3d 373, 392 (4th Cir. 2001) (addressing the elements of a retaliation claim in a Rehabilitation Act and Americans with Disabilities Act case)). "If the employer makes this showing, the burden shifts to the [Plaintiff] to establish that the employer's legitimate business reasons are pretext. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143 (2000) (addressing the elements of a retaliation claim in an Age Discrimination in Employment Act case).

Relevant to this dispute, the Fourth Circuit has held that an "adverse action," within the context of a discrimination claim, is an action that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (addressing the elements of a discrimination claim in a Title VII case).  The standard for showing an adverse action within the context of a retaliation claim is slightly different.  To prevail on a retaliation claim, a plaintiff must "show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation omitted) (addressing the elements of a retaliation claim in a Title VII case).  But a "dislike of or disagreement with an employer's decisions does not invariably make those decisions ones that adversely affected some aspect of employment." *Adams v. Anne Arundel Cnty. Pub. Sch.,* 789 F.3d 422, 431 (4th Cir. 2015).

The Fourth Circuit has also held within the context of a Title VII claim that to be

actionable as part of a discrimination claim, "a reassignment [must have] had some significant detrimental effect." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004) (quoting *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999)); *see also*, *Edmonson v. Potter*, 118 F. App'x 726, 729 (4th Cir. 2004) ("A transfer in duties or reassignment that does not result in any decrease in salary, benefits, or rank cannot constitute an adverse employment action necessary to state a prima facie case of discrimination."). Given this, the Fourth Circuit has also held that, within the context of an Americans with Disabilities claim, "if an employee voluntarily requests a transfer, and the employer agrees to it, there is no actionable adverse action. *Laird v. Fairfax Cnty., Va.*, 978 F.3d 887, 894 (4th Cir. 2020) (citing *Simpson v. Borg-Warner Auto., Inc.*, 196 F.3d 873, 876 (7th Cir. 1999) (finding no "adverse action" where the employee requested a "downgrade"); *see also Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 521 (8th Cir. 2011) (finding no "adverse action" when the evidence showed that the plaintiff "voluntarily" transferred to another job).

Lastly, to establish a *prima facie* claim of failure to accommodate under the Rehabilitation Act, a plaintiff must show that: (1) she was a qualified person with a disability; (2) the employer had notice of the disability; (3) the plaintiff could perform the essential functions of the position with a reasonable accommodation; and (4) the employer nonetheless refused to make the accommodation. *Hannah P.*, 916 F.3d at 337; *see also Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013). In this regard, the "essential functions" of a position are "fundamental job duties of the employment position," as determined by, among other things, the employer's judgment of whether a function is essential and written job descriptions. 29 C.F.R. § 1630.2(n). "[R]easonable accommodations" are "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). And so, a reasonable accommodation is one that enables the employee to perform the essential functions of the position. *See Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 580-81 (4th Cir. 2015) (holding that "[a]n employer is not required to grant even a reasonable accommodation unless it would enable the employee to perform all of the essential functions of her position.").

## IV. LEGAL ANALYSIS

The Defendant has moved to dismiss this matter, or, alternatively, for summary judgment in his favor, pursuant to Fed. R. Civ. P. 12(b)(6) and 56, upon two grounds. First, Defendant argues that Plaintiff's Rehabilitation Act discrimination and retaliation claims fail as a matter of law, because: (1) Plaintiff did not suffer an adverse action; (2) Plaintiff cannot show that disability was the sole reason for her reassignment; (3) Plaintiff cannot show a causal nexus between her protected activity and the reassignment; and (4) Plaintiff cannot establish pretext. ECF No. 16-1 at 1-2.[3] Second, Defendant argues that Plaintiff's reasonable accommodation claim also fails as a matter of law, because her reassignment was a reasonable accommodation. *Id*. at 17-18. And so, Defendant requests that the Court either dismiss this matter, or enter summary judgment in his favor on all claims. *Id*. at 18.

In her response in opposition, Plaintiff counters that she has sufficiently alleged plausible claims for discrimination, retaliation and failure to accommodate under the Rehabilitation Act in this matter, because: (1) she has suffered an adverse employment action within the meaning of the Rehabilitation Act; (2) she is not required to show that disability was the sole reason for her reassignment under Section 501 of the Rehabilitation Act; (3) the temporal proximity between her protected activity and her reassignment raises an inference of reprisal sufficient to establish a causal link; (4) the SSA's claims that her poor performance was reason for reassignment are pretext for discrimination; and (5) the SSA engaged in disability discrimination when it failed to accommodate her disability. ECF No. 17 at 4-5, 9, 12, 14, 17. And so, Plaintiff requests that the Court deny the Defendant's dispositive motion. *Id*. at 22.

For the reasons that follow, the undisputed material facts in this case show that Plaintiff cannot prevail on her Rehabilitation Act discrimination and retaliation claims, because her voluntary reassignment to a new position that offered the same pay grade, salary and benefits was not an adverse action under the Rehabilitation Act. In addition, Plaintiff cannot rely upon any protected activity that occurred in August and September 2017, to support her retaliation

---

[3] Defendant appears to have withdrawn his argument that Plaintiff's Rehabilitation Act claims fail as a matter of law, because she cannot show that disability was the sole reason for her reassignment. *See generally,* ECF No. 32 .

11

claim, because this protected activity occurred after the SSA raised concerns about her work performance. Lastly, the undisputed material facts also make clear that Plaintiff cannot prevail on her failure to accommodate claim, because for her reassignment constitutes a reasonable accommodation under the Rehabilitation Act. And so, the Court: GRANTS-in-PART the Defendant's motion to dismiss and (2) DISMISSES the complaint.

### A. Plaintiff Cannot Prevail On Her Discrimination And Retaliation Claims

#### 1. Plaintiff Cannot Show An Adverse Employment Action

As an initial matter, Defendant persuasively argues that the undisputed material facts in this case show that Plaintiff cannot prevail on her Rehabilitation Act discrimination and retaliation claims, because she has not suffered an adverse employment action. ECF No. 16-1. To prevail on her discrimination claim, Plaintiff must show, among other things, that: "she suffered an adverse employment action solely on the basis of her disability." *Hannah P. v. Coats*, 916 F.3d 327, 342 (4th Cir. 2019). To prevail on a retaliation claim under the Rehabilitation Act, Plaintiff must similarly show that her employer acted adversely against her after she engaged in a protected activity. *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015). And so, Plaintiff must show that her reassignment to the management analyst position constitutes an adverse employment action.

In this regard, the Fourth Circuit has held that an adverse employment action is an action that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). While the standard for showing an adverse employment action within the context of Plaintiff's retaliation claim is somewhat lower, Plaintiff must still show that a reasonable employee would have found the reassignment to be "materially adverse, which means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Notably, the Fourth Circuit has held that "[i]f an employee voluntarily requests a transfer, and the employer agrees to it, there is no actionable adverse action. *Laird v. Fairfax Cnty., Va.*, 978 F.3d 887, 894 (4th Cir. 2020) (citing *Simpson v. Borg-Warner Auto., Inc.*, 196 F.3d 873, 876 (7th Cir. 1999) (finding no "adverse action" where the employee requested a "downgrade"). And so, a plaintiff cannot suffer an adverse action if

she voluntary transfers to another position. *Laird*, 978 F.3d at 894 (4th Cir. 2020) (citing *Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 521 (8th Cir. 2011) (finding no "adverse action" when the evidence showed that the plaintiff "voluntarily" transferred to another job); *see also Hooper v. Maryland*, No. 94-1067, 1995 WL 8043, at *5 (4th Cir. Jan. 10, 1995) (holding that an employer's "acceptance of a voluntary request to transfer is not an adverse employment action" even if employer's actions prompted plaintiff to request the transfer).

That is precisely the circumstance presented in this case. It is undisputed that Plaintiff voluntarily accepted a reassignment to the position of management analyst, a GS-13 non-supervisory position in the SSA's Office of Realty Management, on October 2, 2017. ECF No. 1 at ¶ 55. While Plaintiff alleges that she reluctantly accepted this reassignment, she acknowledges that the reassignment was voluntary. ECF No. 1 at ¶ 55 (stating that Plaintiff accepted the reassignment to mitigate her harm and to be removed from a hostile work environment). A contemporaneous email from Plaintiff to Mr. Julian also reflects the voluntary nature of Plaintiff's reassignment to the management analyst position. *See* ECF No. 16-1 at 7 (stating that "I'm very excited having the opportunity to participate in our national leasing initiatives. I'm most grateful to you for making it happen.").

Given this, Plaintiff's acceptance of a voluntary reassignment precludes her from showing an adverse employment action as a matter of law with regards to her discrimination and retaliation claims. And so, Plaintiff cannot prevail on her discrimination and retaliation claims based upon her voluntary reassignment.

While a somewhat closer question, Defendant also argues with persuasion that Plaintiff cannot show an adverse employment action in this matter, because the undisputed material facts show that her reassignment was not significantly detrimental. To be actionable, Plaintiff's reassignment must have "had some significant detrimental effect." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004) (quoting *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999)). *See also*, *Edmonson v. Potter*, 118 F. App'x 726, 729 (4th Cir. 2004) ("A transfer in duties or reassignment that does not result in any decrease in salary, benefits, or rank cannot constitute an adverse employment action necessary to state a prima facie case of discrimination."). The reassignment also must be such that it would "deter a reasonable employee" from pursuing her discrimination claims. *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006). Plaintiff simply cannot satisfy meet these standards.

In this case, Plaintiff's Standard Form 50 for her new position makes clear that the reassignment to the management analyst position did not involve any change to Plaintiff's pay grade or salary. ECF No. 16-1 at 7; Def. Ex. 17. Notably, the undisputed material facts show that, at the time of Plaintiff's reassignment, the building manager position had a GS-13, Step 2 pay grade, with a salary of $97,956, and the management analyst position also had a GS-13, Step 2 pay grade, with a salary of $97,956. *Id*.

It is also undisputed that Plaintiff's new position offered the same benefits as her prior position as a building manager for OBM. ECF No. 1 at ¶ 55; ECF No. 16-1; Def. Ex. 6 (Herkert Deposition Transcript Excerpts) at 113:17-114:4 (Plaintiff's deposition testimony acknowledging that the reassignment did not change her grade, salary, or benefits.). While Plaintiff alleges that her new position offered less "prestige, interest, and advancement," taken as true, such facts are not sufficient to show that her reassignment was substantially detrimental.[4] *See Edmonson*, 118 F. App'x at 729 (plaintiff's "claim that the reassignment caused her to lose her status with other supervisors and workers" was not an adverse action in a discrimination case); *Madock v. McHugh*, No. 10-cv-02706 (ELH), 2011 WL 3654460, at *16 (D. Md. Aug. 18, 2011) (holding, in a discrimination case, "a poor performance evaluation that 'merely causes a loss of prestige or status' is not actionable") (citing *James v. Booz- Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004)); *Edmonson*, 118 F. App'x at 729 (finding no adverse action in a discrimination case, noting plaintiff's "dissatisfaction with the assignments she received without the scheduling modification is not actionable"). And so, again, Plaintiff cannot show that suffered an adverse employment action to prevail on her Rehabilitation Act discrimination and retaliation claims.[5]

---

[4] Plaintiff's argument that her new position was "objectively worse" in terms of advancement is contradicted by the undisputed fact that she was promoted to a higher salary, supervisory position as the GS-14 level in 2020. *See* ECF No. 16-1 at 8*;* Def. Ex. 18.

[5] To the extent that Plaintiff relies upon protected activities that occurred in August and September of 2017 to support her retaliation claim, this claim must also fail because she cannot establish a causal connection between her reassignment on October 2, 2017, and these protected activities. *Barski v. Cyberdata Techs., Inc.,* No. 17-CV-03593(PX), 2020 WL 4471827, at *8 (D. Md. Aug. 4, 2020)(causal inference is rebutted by fact that concerns about plaintiff's work performance predated the protected activity.). The undisputed material facts show that the SSA raised concerns about Plaintiff's work performance in April and May 2017, before Plaintiff requested a reasonable accommodation in August 2017 and initiated contact with an EEO counselor on September 15, 2017. ECF No. 1 ¶ 62.

**2. Plaintiff Cannot Prevail On Her Reasonable Accommodation Claim**

The undisputed material facts in this case also make clear that Plaintiff cannot prevail on her reasonable accommodation claim, because the SSA provided Plaintiff with a reasonable accommodation by reassigning her to the management analyst position. To prevail on her failure to accommodate claim, Plaintiff must show that: (1) she was a qualified person with a disability; (2) the employer had notice of the disability; (3) the plaintiff could perform the essential functions of the position with a reasonable accommodation; and (4) the employer nonetheless refused to make the accommodation. *Hannah P.*, 916 F.3d at 337. The undisputed facts in this case demonstrate that Plaintiff cannot show that the SSA refused to make a reasonable the accommodation to satisfy the fourth element of her failure to accommodate claim.

Here, the undisputed material facts show that SSA granted Plaintiff's her request for a reasonable accommodation on October 24, 2017, shortly after Plaintiff began her new position as a management analysis. ECF No. 1 at ¶ 60; ECF No. 16-1 at 8. It is undisputed that this accommodation allowed Plaintiff to telework up to two days per week in this new position. ECF No. 16-20 (Def. Ex. 17 Letter from Mr. Julian to Plaintiff).

It is also undisputed that the SSA allowed Plaintiff to request one additional episodic telework day as necessary. *Id.* While Plaintiff may have preferred a different accommodation with regards to the number of days that she could telework, the Rehabilitation Act does not require that the SSA to provide Plaintiff with the accommodation of her choice. *See Hannah P.*, 916 F.3d at 337. Rather, SSA has the discretion to choose between effective accommodations. *Hannah P.*, 916 F.3d at 338 (citation omitted); *see also Adams,* 789 F.3d at 433 (recognizing that the law requires a reasonable accommodation, and not a perfect accommodation, and that "[h]indsight must not underestimate hard choices that employers, in consultation with their employees and medical professionals, confront at the time").[6]

---

[6] Plaintiff's argument that summary judgment is not appropriate, because she disagrees with the SSA's decision regarding the number of her telework days, is also unavailing. Plaintiff's belief that she could have successfully performed the job with more telework days does not render the SSA's decision pretextual nor does it create a genuine issue of material fact. *See Bryant v. Bell Atl. Md., Inc.,* 288 F.3d 124, 135 (4th Cir. 2002) (citing *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995) (holding that a plaintiff's "subjective beliefs" and "unsupported speculation" are not sufficient to create a genuine issue of material fact).

In short, the unrebutted factual record in this case shows that the SSA has satisfied this standard in this case. And so, the Court also GRANTS Defendant's motion for summary judgment with respect to Plaintiff's failure to accommodate claim. Fed. R. Civ. P. 56.

## V.     CONCLUSION

In sum, the undisputed material facts in this case show that Plaintiff cannot prevail on her Rehabilitation Act discrimination and retaliation claims, because her voluntary reassignment to a new position that offered the same pay grade, salary and benefits was not an adverse employment action. In addition, the undisputed material facts also make clear that Plaintiff cannot prevail on her failure to accommodate claim, because for her reassignment constitutes a reasonable accommodation under the Rehabilitation Act. And so, for the foregoing reasons, the Court:

(1) **GRANTS-in-PART** the Defendant's motion; and

(2) **DISMISSES** the complaint.

A separate Order shall issue.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge