## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| MARY FRANCES HERKERT, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 22-cv-03139-LKG |
| v. | ) ) | |
| FRANK BISIGNANO,[1] | ) ) | Dated:  July 1, 2026 |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION

### I.      INTRODUCTION

In this employment discrimination case, the Plaintiff, Mary Frances Herkert, alleges that the Defendant, Frank Bisignano, the Commissioner of the Social Security Administration ("SSA") discriminated and retaliated against her upon the basis of disability, and failed to provide a reasonable accommodation, by reassigning her to a different position within the SSA, in violation of Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791.  *See generally* ECF No. 1.  The Defendant has moved for summary judgment on the Plaintiff's claims, pursuant to Fed. R. Civ. P. 56.  ECF Nos. 49 and 49-1.  The motion is fully briefed.  ECF Nos. 49, 49-1, 50 and 52.  No hearing is necessary to resolve the motion.  *See* L.R 106.5 (D. Md. 2025).  For the reasons that follow, the Court **DENIES** the Defendant's motion for summary judgment (ECF No. 49).

---

[1] The Plaintiff initially brought this case against former Acting Commissioner of the Social Security Administration, Kilolo Kijakazi.  ECF No. 1.  The Court substitutes Commissioner of the SSA, Frank Bisignano, as the proper Defendant in this matter.

II.    **FACTUAL AND PROCEDURAL BACKGROUND**[2]

    A.  **Factual Background**

In this civil action, the Plaintiff alleges that the Defendant discriminated and retaliated against her upon the basis of disability, and failed to provide a reasonable accommodation, by reassigning her to a different position within the SSA, in violation of Section 501 of the Rehabilitation Act. *See generally* ECF No. 1. Specifically, the Plaintiff asserts the following three claims against the Defendant in the complaint: (1) Rehabilitation Act-disability discrimination (Count I); (2) Rehabilitation Act-reprisal (Count II); and (3) Rehabilitation Act-failure to accommodate (Count III). ECF No. 1 at 11–15. As relief, the Plaintiff seeks, among other things, certain declaratory relief and to recover monetary damages, attorney's fees and costs from the Defendant. *Id*. at Prayer for Relief.

<u>The Plaintiff's Employment History</u>

The facts about the Plaintiff's employment with the SSA are largely undisputed and set forth below. The Plaintiff was employed as a building manager in the SSA's Office of Buildings Management ("OBM") from December 14, 2015, to on or about October 15, 2017. ECF No. 1 at ¶ 19; ECF No. 49-1 at 1; ECF No. 17-3, Pl. Ex. A (Herkert Declaration) at ¶ 3. In this capacity, the Plaintiff was responsible for the oversight of building management services for the SSA. ECF No. 49-1 at 1–2.

Pursuant to the SSA's policy, the agency's building managers were generally allowed to telework one day per week, due to the in-office job responsibilities related to the position. *Id*. at 2; ECF No. 16-4, Def. Ex. 1 (Affidavit of Ryan Felber) at 4. Prior to accepting employment with the SSA, the Plaintiff was diagnosed with multiple disabilities, including but not limited to, severe renal impairment, pulmonary impairment and spondylosis. ECF No. 1 at ¶ 21; ECF No. 17-3, Pl. Ex. A (Herkert Declaration) at ¶ 2. And so, the Plaintiff requested permission from the

---

[2] The facts recited in this memorandum opinion are taken from the complaint; the Defendant's statement of undisputed material facts; the Plaintiff's response to the Defendant's statement of undisputed material facts; the exhibits to the Defendant's motion to dismiss, or, in the alternative, for summary judgment, dated July 28, 2023; and the exhibits to the Plaintiff's opposition to the Defendant's motion to dismiss, or, in the alternative, for summary judgment, dated August 18, 2023. ECF Nos. 1, 16, 16-1, 16-4, 16-6, 16-7, 16-9, 16-10, 16-12, 16-13, 16-14, 16-14, 16-15, 16-16, 16-17, 16-19, 16-20, 16-21, 17-3 and 49-1. Unless stated otherwise, the facts recited in this memorandum opinion are undisputed.

SSA to telework on days other than her scheduled telework day as a reasonable accommodation before onboarding with the agency.  ECF No. 1 at ¶ 21; ECF No. 16-4, Def. Ex. 1 (Affidavit of Ryan Felber) at 4.

The Plaintiff's Telework Requests

It is undisputed that the Plaintiff requested and received approval to telework during her employment as a building manager for the SSA on several occasions.  ECF No. 1 at ¶ 27; ECF No. 16-6, Def. Ex. 3 (Affidavit of Sandra Eddington) at 4; ECF No. 16-7, Def. Ex. 4 (Eddington Deposition Transcript Excerpts) at 30:11–31:2.  In this regard, the Plaintiff acknowledges that she received approval for approximately 256 hours of telework during the period of April 2016 to August 8, 2017.  ECF No. 49-1 at 2; *see* ECF No. 16-6, Def. Ex. 3 (Affidavit of Sandra Eddington) at 4; *see also* ECF No. 16-7, Def. Ex. 4 (Eddington Deposition Transcript Excerpts) at 30:11–31:2.  It is also undisputed that, on August 3, 2016, the Plaintiff requested, and was approved, to work from home during the period of September 12, 2016, to September 30, 2016, with a return-to-work date of October 3, 2016.  ECF No. 49-1 at 3; *see* ECF No. 16-10, Def. Ex. 7 (Pages from SSA Document Production) at 35–37; *see also* ECF No. 16-12, Def. Ex. 9 at 2–3. And so, the Plaintiff ultimately returned to work on October 7, 2016, after the SSA approved her request to work from home for an additional four days.  ECF No. 49-1 at 3; ECF No. 16-10, Def. Ex. 7 (Pages from SSA Document Production) at 21.

It is also undisputed that, in October 2017, the SSA approved the Plaintiff's request to work from home during the period of October 2017 to November 2017.  ECF No. 49-1 at 3; ECF No. 16-10, Def. Ex. 7 (Pages from SSA Document Production) at 33–34.  Thereafter, in January 2017, the Plaintiff became eligible for, and was approved for, scheduled telework. ECF No. 49-1 at 3; ECF No. 16-9, Def. Ex. 6 at 75:2–4 (Herkert deposition testimony acknowledging scheduled telework in 2017).  The parties also agree that the Plaintiff requested, and received approval for, 409 hours of sick leave during the period of 2016 to 2017 and that she requested, and was approved for, 340.5 hours of annual leave during this time period.  ECF No. 49-1 at 3; ECF No. 16-10, Def. Ex. 7 (Pages from SSA Document Production) at 38–42.

The Plaintiff contends that the SSA changed its position with regards to her requests to telework in mid-2017.  In this regard the Plaintiff alleges that she discussed the need for telework as a reasonable accommodation for her continuing medical issues with her supervisor, Sandra

Eddington, on July 17, 2017.  ECF No. 1 at ¶ 36; ECF No. 17-3, Pl. Ex. A (Herkert Declaration) at ¶ 30.  The Plaintiff also alleges that, on August 8, 2017, Ms. Eddington retracted the approval of her request to telework and required that the Plaintiff use her leave, or compensation time for days that she wished to remain at home.  ECF No. 1 at ¶ 38; ECF No. 17-3, Pl. Ex. A (Herkert Declaration) at ¶ 33.

In addition, the Plaintiff alleges that, on August 14, 2017, she requested to speak with two other supervisors, Kelly Barr and Ryan Felber, to discuss the retraction of her request to telework.  ECF No. 1 at ¶ 40; ECF No. 17-3, Pl. Ex. A (Herkert Declaration) at ¶ 38.  But the Plaintiff alleges that she was denied telework as an accommodation during this meeting, due to "undue hardship on the Agency."  ECF No. 1 at ¶ 42; ECF No. 17-3, Pl. Ex. A (Herkert Declaration) at ¶ 39.  And so, the Plaintiff informed Mr. Felber of her intention to engage in Equal Employment Opportunity ("EEO") activity related to her request for telework on August 28, 2017.  ECF No. 1 at ¶ 44; ECF No. 17-3, Pl. Ex. A (Herkert Declaration) at ¶ 42.

### The Plaintiff's First EEO Complaint

On August 29, 2017, the Plaintiff filed a disability discrimination claim with the SSA regarding her request for telework as a reasonable accommodation.  ECF No. 1 at ¶¶ 45–46; ECF No. 49-1 at 7; ECF No. 17-3, Pl. Ex. A (Herkert Declaration) at ¶ 43.  Thereafter, on September 15, 2017, the Plaintiff submitted a request for EEO counseling for harassment, failure to approve reasonable accommodation and hostile work environment.  ECF No. 1 at ¶ 49; ECF No. 17-3, Pl. Ex. A (Herkert Declaration) at ¶ 45.  On September 19, 2017, the SSA's medical officer, Victor Hrehorovich, determined that: (1) the Plaintiff has a disabling condition qualified under the Rehabilitation Act; (2) her condition warrants a reasonable accommodation; and (3) telework for two to five days within a pay period is "reasonable and effective."  ECF No. 1 at ¶ 50; ECF No. 17-3, Pl. Ex. A (Herkert Declaration) at ¶ 46.

### The Plaintiff's Work Performance In 2017

The parties agree that the Plaintiff received positive performance evaluations throughout 2016 and into early 2017.  ECF No. 49-1 at 4; ECF No. 50 at 4.  But the parties disagree about the caliber of Plaintiff's work performance at the SSA beginning in the spring of 2017.  ECF No. 49-1 at 4; ECF No. 50 at 4.

In this regard, the Plaintiff maintains that she received a positive mid-year performance evaluation that highlighted her problem-solving skills on April 26, 2017, and that she was never

4

placed on a performance improvement plan.  ECF No. 1 at ¶ 32; ECF No. 50 at 8; ECF No. 17-3, Pl. Ex. A (Herkert Declaration) at ¶ 29.  But the Defendant maintains that the Plaintiff began demonstrating poor work performance in April or May 2017.  ECF No. 49-1 at 4; ECF No. 16-7, Def. Ex. 4 (Eddington Deposition Transcript Excerpts) at 37:6–9.  Specifically, the Defendant maintains that the Plaintiff's poor job performance included the following conduct: (1) the Plaintiff failed to include Ms. Eddington on emails as requested; (2) the Plaintiff took four months to gather certain information requested by the SSA's Office of General Counsel and she ultimately did not provide the requested information; (3) the Plaintiff failed to timely review position descriptions for a management analyst position and a management assistant position; (4) the Plaintiff failed to respond to a request to participate in new employee orientation in July 2017; (5) the Plaintiff failed to approve credit card "micro" purchases that her subordinates made despite Ms. Eddington asking her to do so several times beginning in April or May 2017; (6) the Plaintiff failed to timely obtain an estimate for new countertops in the Wabash building in January 2017, after being asked to do so; (7) the Plaintiff failed to timely submit mid-year appraisals in 2017; and (8) the Plaintiff struggled to interact in a positive way with colleagues, including Ron Bates and Alice Shank, among others.  *See* ECF No. 49-1 at 4–6; ECF No. 16-7, Def. Ex. 4 (Eddington Deposition Transcript Excerpts) at 37:12–38:20 and 42:16–21; ECF No. 16-9, Def. Ex. 6 (Herkert Deposition Transcript Excerpts) at 84:13–85:13, 86:19–88:15, 88:20-92:3 and 99:17–100:14; ECF No. 16-10, Def. Ex. 7 (Pages from SSA Document Production) at 6-15, 581; ECF No. 16-13, Def. Ex. 10; ECF No. 16-14, Def. Ex. 11 (Barr Affidavit) at 3.

It is undisputed that Ms. Eddington met with the Plaintiff to discuss the Plaintiff's job performance on August 17, 2017.  ECF No. 49-1 at 6; ECF No. 16-16, Def. Ex. 13.  The contemporaneous notes from this meeting show that Ms. Eddington stated that:

> I am concerned with your ability to complete assignments by their due dates.  I wanted to bring to your attention my concern and see if we can come develop and discuss some ways for you to meet important deadlines . . . . Together we should be able to help you meet the expectations for your performance.

ECF No. 16-16, Def. Ex. 13 at 2; *see also* ECF No. 49-1 at 6; ECF No. 16-17, Def. Ex. 14 at 11–14 (Ms. Eddington expressing same performance concerns in the Plaintiff's 2017 job performance appraisal).

<u>The Plaintiff's 2017 Reassignment</u>

The SSA sought to reassign the Plaintiff to a non-supervisory position as a management analyst in the fall of 2017. ECF No. 49-1 at 6; *see* ECF No. 1 at ¶ 51. After the Plaintiff objected to this reassignment, the SSA's Deputy Associate Commissioner, Jim Julian, offered to reassign the Plaintiff to the position of management analyst in the SSA's Office of Realty Management on October 2, 2017. ECF No. 1 at ¶ 55; ECF No. 49-1 at 6.

The Plaintiff alleges that she reluctantly accepted this reassignment, because it would "remove her from the hostile, harassing, and retaliatory work environment in OBM," and guaranteed she would keep her pay grade. ECF No. 1 at ¶ 55. But, in an email that the Plaintiff sent to Mr. Julian regarding this reassignment, the Plaintiff states that: "I'm very excited having the opportunity to participate in our national leasing initiatives. I'm most grateful to you for making it happen." ECF No. 49-1 at 6; ECF No. 16-15, Def. Ex. 12 at 2.

On October 16, 2017, the Plaintiff began her new role as a management analyst for the SSA's Office of Realty Management. ECF No. 1 at ¶ 59; ECF No. 17-3, Pl. Ex. A (Herkert Declaration) at ¶ 55. The Plaintiff contends that this new position was a demotion, because it was "highly clerical," "less prestigious," "less promotional potential," and "[lacked] in variety and responsibility and skill." ECF No. 1 at ¶ 59.

In this regard, it is undisputed that the Plaintiff's new position involved a non-supervisory role. ECF No. 1 at ¶ 51; *See* ECF No. 49-1 at 6–8. It is also undisputed that the Plaintiff received the same pay grade, salary and benefits for this new position as she did while working as a building manager. ECF No. 16-19, Def. Ex. 16 (Standard Form 50 showing that the Plaintiff's reassignment did not involve any change to her pay grade or salary) at 2; *see also* ECF No. 49-1 at 7; ECF No. 16-9, Def. Ex. 6 at 113:17–114:4 (Herkert deposition testimony acknowledging that the reassignment did not change her grade, salary, or benefits).

On October 24, 2017, the SSA granted the Plaintiff's request for a reasonable accommodation, by allowing the Plaintiff to telework up to two days a week in connection with her new position. ECF No. 49-1 at 7; ECF No. 16-20, Def. Ex. 17 (Letter from Mr. Julian to Plaintiff). The SSA also allowed the Plaintiff to request one additional episodic telework day as needed. ECF No. 49-1 at 7.

6

The Plaintiff's Second EEO Complaint

On December 17, 2017, the Plaintiff filed a complaint with the EEOC alleging disability discrimination. ECF No. 1 at ¶ 11. The EEOC, subsequently, made a finding of no discrimination or retaliation on August 19, 2020. *Id*. at ¶ 14. The EEOC issued a final agency decision on September 4, 2020. *Id*. After the Plaintiff unsuccessfully appealed the decision, the EEOC's Office of Federal Operations affirmed the ruling on September 6, 2022. *Id*. at ¶¶ 15 and 18.

The Plaintiff's Promotion

In November 2020, the Plaintiff was promoted to the position of supervisory management analyst. ECF No. 49-1 at 8; *see* ECF No. 16-21, Def. Ex. 18 (SF-50 form showing promotion). And so, the Plaintiff is currently employed by the SSA in this role and she is receiving compensation at the GS-14 pay grade. ECF No. 49-1 at 8.

**B. Procedural Background**

The Plaintiff commenced this civil action on December 5, 2022. ECF No. 1. On July 28, 2023, the Defendant filed a motion to dismiss, or, in the alternative, for summary judgment, pursuant to Fed. R. Civ. P. 12(b)(6) and 56, and a memorandum in support thereof. ECF Nos. 16 and 16-1.

On March 11, 2024, the Court issued a Memorandum Opinion and Order granting-in-part the Defendant's motion to dismiss and dismissing the complaint (the "March 11, 2024, Decision"). ECF Nos. 34 and 35.

In the March 11, 2024, Decision, the Court held that the undisputed material facts in the case show that the Plaintiff cannot prevail on her Rehabilitation Act claims, because her voluntary reassignment to a new position that offered the same pay grade, salary and benefits was not an adverse action under the Rehabilitation Act. ECF No. 34 at 11–16. And so, the Court granted-in-part the Defendant's motion and dismissed the complaint. *Id.* at 1 and 16.

After the Plaintiff appealed the March 11, 2024, Decision to the United States Court of the Appeals of the Fourth Circuit, the Fourth Circuit issued an opinion and judgment vacating the March 11, 2024, Decision and remanding the case for further proceedings consistent with that opinion. ECF No. 39 and 39-2. In the opinion, the Fourth Circuit observed that, since the Court issued the March 11, 2024, Decision, the Supreme Court in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), has rejected the position that a change in employment status must work a

7

significant harm to support a discrimination claim.  ECF No. 39-2 at 11–12.  Given this, the Fourth Circuit held, with regards to the Plaintiff's Rehabilitation Act discrimination and retaliation claims, that the Court "erred when it held that [the Plaintiff] could not show, as a matter of law, the requisite adverse action to support her discrimination and retaliation claims – either because her reassignment was not sufficiently disadvantageous or material, or because it was voluntary."  *Id.* at 17–18.

The Fourth Circuit also held, with regards to the Plaintiff's Rehabilitation Act reasonable accommodation claim, that it must also vacate the Court's judgment as to this claim, because the Court's analysis of the Plaintiff's discrimination and retaliation claims considerably overlaps with the analysis of her failure-to-accommodate claim.  *Id.* at 20.  And so, the Fourth Circuit vacated the March 11, 2024, Decision and remanded the case for further proceedings consistent with that decision.  *Id.*

On February 13, 2026, the Defendant filed a motion for summary judgment, pursuant to Fed. R. Civ. P. 56, and a memorandum in support thereof.  ECF Nos. 49 and 49-1.  The Plaintiff filed a response in opposition to the Defendant's motion on March 18, 2026.  ECF No. 50.  On April 8, 2026, the Defendant filed a reply brief.  ECF No. 52.

The Defendant's motion for summary judgment having been fully briefed, the Court resolves the pending motion.

## III.    LEGAL STANDARDS

### A.  Fed. R. Civ. P. 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).  In

this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993). But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim. *See Celotex Corp.*, 477 U.S. at 322-23. Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id.* at 323. And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

In this regard, the United States Court of Appeals for the Fourth Circuit has held that, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir. 1997). And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

### B. The Rehabilitation Act Claims

The Fourth Circuit has held that "Rehabilitation Act claims for discrimination are reviewed under the *McDonnell Douglas* burden-shifting framework." *Hannah P. v. Coats*, 916 F.3d 327, 342 (4th Cir. 2019) (citations omitted). "Under that framework, [Plaintiff] has the initial burden of establishing a *prima facie* case of [Rehabilitation Act] discrimination" and a plaintiff "must show that: (1) she is disabled; (2) she was otherwise qualified for the position; and (3) she suffered an adverse employment action solely on the basis of her disability." *Id.* (citations omitted). If a plaintiff is able to establish a *prima facie* case, the burden shifts to the defendant "to provide a legitimate, nondiscriminatory reason for its conduct." *Id.* "If the defendant provides such a reason, the plaintiff 'bears the ultimate burden of persuasion' and 'must show by a preponderance of the evidence that the proffered reason was a pretext for discrimination.'" *Id.*

To establish a *prima facie* case of Rehabilitation Act retaliation, a plaintiff must show that: (1) "she engaged in a protected activity"; (2) "her employer acted adversely against her";

and (3) "a causal relationship existed between the protected activity and the adverse employment activity." *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (addressing the elements of a retaliation claim in a Title VII case). If plaintiff successfully states a *prima facie* case for retaliation, "the burden shifts to the employer 'to rebut the presumption of retaliation by articulating a legitimate nonretaliatory reason for its actions.'" *Smith v. CSRA*, 12 F.4th 396, 416 (4th Cir. 2021) (quoting *Rhoads v. FDIC*, 257 F.3d 373, 392 (4th Cir. 2001)) (addressing the elements of a retaliation claim in a Rehabilitation Act and Americans with Disabilities Act case). If the employer makes this showing, the burden shifts to the plaintiff to establish that the employer's legitimate business reasons are pretext. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (addressing the elements of a retaliation claim in an Age Discrimination in Employment Act case). To prevail on a Rehabilitation retaliation claim, a plaintiff must also "show that a reasonable employee would have found the challenged action materially adverse," in that it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation omitted) (addressing the elements of a retaliation claim in a Title VII case).

In addition, the Supreme Court has held that a plaintiff alleging discrimination under Title VII need not show that the harm incurred from a reassignment was "significant," "serious," or "substantial." *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024). Rather, a plaintiff must "show some harm from a forced transfer to prevail," but "she need not show that the injury satisfies a significance test." *Id.* at 350. And so, it is enough that the plaintiff has suffered "some disadvantageous change in an employment term or condition." *Id.* at 354 (internal quotation marks and citation omitted).[3]

---

[3] *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), which was decided after the March 11, 2024, Decision, on the Defendant's motion to dismiss (ECF No. 34), abrogated the Fourth Circuit's decision in *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004). *See Muldrow*, 601 U.S. at 353 & n.1 (listing *James* as among the decisions incorrectly requiring a "heightened threshold of harm" to make out a discrimination claim). The Fourth Circuit has held that *Muldrow* is applicable to Rehabilitation Act discrimination claims, because "courts routinely rely on Title VII precedent in ADA cases, and the Rehabilitation Act expressly incorporates ADA standards, *see* 29 U.S.C. § 794(d)." *Herkert v. Bisignano*, 151 F.4th 157, 164 (4th Cir. 2025) (internal citation omitted).

Lastly, to establish a *prima facie* case of failure to accommodate under the Rehabilitation Act, a plaintiff must show that: (1) she was a qualified person with a disability; (2) the employer had notice of the disability; (3) the plaintiff could perform the essential functions of the position with a reasonable accommodation; and (4) the employer nonetheless refused to make the accommodation.   *Hannah P.*, 916 F.3d at 337; *see also Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013).  The "essential functions" of a position are "fundamental job duties of the employment position," as determined by, among other things, the employer's judgment of whether a function is essential and written job descriptions.  29 C.F.R. § 1630.2(n).  "[R]easonable accommodations" are "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position."  29 C.F.R. § 1630.2(o)(1)(ii).  And so, a reasonable accommodation is one that enables the employee to perform the essential functions of the position.  *See Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 580-81 (4th Cir. 2015) (holding that "[a]n employer is not required to grant even a reasonable accommodation unless it would enable the employee to perform all of the essential functions of her position").  And so, the Fourth Circuit has explained that, "unilateral[ ]" reassignment of an employee to a "position they do not want" may not qualify as a reasonable accommodation and that "reassignment is a last-among-equals accommodation that should be held 'in reserve for unusual circumstances.'"  *Wirtes v. City of Newport News*, 996 F.3d 234, 241 (4th Cir. 2021) (cleaned up) (holding that district court erred in granting summary judgment on reasonable accommodation claim "without considering the strongly disfavored status" of involuntary transfers when disabled employee can perform essential functions of current position with or without reasonable accommodation); *see also Reyazuddin v. Montgomery Cnty., Maryland*, 789 F.3d 407, 416 (4th Cir. 2015) (internal quotations omitted) (holding that "a reasonable accommodation should provide a meaningful equal employment opportunity" and that "[m]eaningful equal employment opportunity means an opportunity to attain the same level of performance as is available to nondisabled employees having similar skills and abilities" (internal quotations omitted)).

## IV.   LEGAL ANALYSIS

The Defendant has moved for summary judgment on the Plaintiff's Rehabilitation Act claims, pursuant to Fed. R. Civ. P. 56, upon several grounds.  First, the Defendant argues that the

11

undisputed material facts in this case show that the Plaintiff's Rehabilitation Act discrimination and retaliation claims must fail as a matter of law, because the Defendant has articulated a legitimate non-discriminatory reason for the Plaintiff's reassignment to a new position. ECF No. 49-1 at 9–12. Second, the Defendant argues that the undisputed material facts also show that the Plaintiff's Rehabilitation Act reasonable accommodation claim must fail as a matter of law, because the Plaintiff's reassignment was a reasonable accommodation to allow for more frequent telework. *Id*. at 12–13. And so, the Defendant requests that the Court grant its motion for summary judgment and enter judgment summarily its favor on all claims in this case. *Id*. at 13.

In her response in opposition to the Defendant's motion, the Plaintiff counters that summary judgment is not warranted in this case, because: (1) she can establish a *prima facie* case for disability discrimination and retaliation under the Rehabilitation Act; (2) the record evidence shows that the Defendant failed to provide her with a reasonable accommodation, in violation of the Rehabilitation Act; and (3) a jury could reasonably conclude that the Defendant's proffered reason for reassigning her to a new position is a pretext for disability discrimination and retaliation. ECF No. 50 at 12–26. Given this, the Plaintiff argues that there are genuine disputes of material facts in this case that preclude summary judgment. *Id*. at 26. And so, the Plaintiff requests that the Court deny the Defendant's motion for summary judgment. *Id*. at 26–27.

For the reasons that follow, the evidence currently before the Court shows that there are genuine disputes of material facts, regarding the Defendant's proffered reason for the Plaintiff's reassignment, that preclude entry of summary judgment on the Plaintiff's Rehabilitation Act discrimination and retaliation claims. The evidence before the Court also makes clear that summary judgment is not warranted on the Plaintiff's failure to accommodate claim, because there are genuine disputes of material facts about whether the Plaintiff's reassignment constitutes a reasonable accommodation under the Rehabilitation Act. And so, the Court DENIES the Defendant's motion for summary judgment (ECF No. 49).

> A. **There Are Material Facts In Dispute About The Defendant's Stated Reason For Reassigning The Plaintiff**

As an initial matter, the undisputed material facts in this case show that there is a genuine issue in dispute, regarding whether the Defendant's proffered reason for reassigning the Plaintiff is a pretext for disability discrimination, that precludes entry of summary judgment on her Rehabilitation Act discrimination and retaliation claims. To prevail on her Rehabilitation Act discrimination claim, the Plaintiff "must show that: (1) she is disabled; (2) she was otherwise

qualified for the position; and (3) she suffered an adverse employment action solely on the basis of her disability." *Hannah P. v. Coats*, 916 F.3d 327, 342 (4th Cir. 2019) (citations omitted). If the Plaintiff is able to establish this *prima facie* case, the burden shifts to the Defendant "to provide a legitimate, nondiscriminatory reason for its conduct." *Id.* "If the Defendant provides such a reason, as is the case here, the Plaintiff bears the ultimate burden of persuasion and must show by a preponderance of the evidence that the proffered reason was a pretext for discrimination." *Id.* (internal citation and quotation marks omitted).

The Plaintiff has a similar burden to prevail on her Rehabilitation Act retaliation claim. To establish a *prima facie* case of Rehabilitation Act retaliation, the Plaintiff must show that: (1) "she engaged in a protected activity"; (2) "her employer acted adversely against her"; and (3) "a causal relationship existed between the protected activity and the adverse employment activity." *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (addressing the elements of a retaliation claim in a Title VII case). Once the Plaintiff successfully establishes a *prima facie* case for retaliation, "the burden shifts to the [Defendant] 'to rebut the presumption of retaliation by articulating a legitimate nonretaliatory reason for its actions.'" *Smith v. CSRA*, 12 F.4th 396, 416 (4th Cir. 2021) (quoting *Rhoads v. FDIC*, 257 F.3d 373, 392 (4th Cir. 2001)) (addressing the elements of a retaliation claim in a Rehabilitation Act and Americans with Disabilities Act case). If the Defendant makes this showing, as is the case here, the burden shifts to the Plaintiff to establish that the proffered legitimate business reason is a pretext. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (addressing the elements of a retaliation claim in an Age Discrimination in Employment Act case).

In this case, the Defendant has proffered a legitimate, non-discriminatory reason for reassigning the Plaintiff, namely, that the Plaintiff had poor work performance in 2017. ECF No. 49-1 at 11; ECF No. 50 at 16. To support this claim, the Defendant points to, among other things, the deposition testimony of the Plaintiff's then-supervisor, Sandra Eddington, who testified that the Plaintiff began demonstrating poor work performance in April or May 2017. ECF No. 49-1 at 4; ECF No. 16-7, Def. Ex. 4 (Eddington Deposition Transcript Excerpts) at 37:6–9; 37:12–38:20 and 42:16–21; *see also* ECF No. 16-9, Def. Ex. 6 (Herkert Deposition Transcript Excerpts) at 84:13–85:13, 86:19–88:15, 88:20–92:3 and 99:17–100:14; ECF No. 16-10, Def. Ex. 7 (Pages from SSA Document Production) at 6–15 and 44; ECF No. 16-13, Def. Ex. 10; ECF No. 16-14, Def. Ex. 11 (Barr Affidavit) at 6.

13

But, the Court agrees with the Plaintiff that there is a genuine dispute in this case about whether the Defendant's stated reason for reassigning her is a pretext for disability discrimination.  First, the undisputed material facts show that the Plaintiff had a satisfactory job performance while she was employed as a building manager in the SSA's OBM from December 14, 2015, until the beginning of 2017.  ECF No. 49-1 at 4; ECF No. 50 at 4.  While the Defendant points to evidence to show that the Plaintiff's work performance declined in 2017, the Plaintiff points to other evidence in the record to show that her work performance remained satisfactory, because she was never put on a performance improvement plan prior to her reassignment.  ECF No. 17-3, Pl. Ex. A (Herkert Declaration) at ¶¶ 50-51; *see also* ECF No. 17-14, Pl. Ex. K at 2 (December 9, 2019, EEOC Hearing Tr. at 24:13–15).  There is also evidence in this case to show that the Defendant's failure to put the Plaintiff on the SSA's "opportunity to perform successfully plan," given her alleged performance deficiencies, is at odds with the SSA's personnel policy manual.  ECF No. 17-16, Pl. Ex. M at 24–25 (SSA's Personnel Policy Manual on performance-based reassignments); *see also* ECF No. 17-14, Pl. Ex. K at 13 (December 5, 2019, EEOC Hearing Tr. at 202:3–13) (testimony that the Plaintiff's reassignment would not have occurred but for her performance issues).

Second, there is evidence in this case to show that the Defendant did not inform the Plaintiff about any concerns with her work performance prior to the reassignment at issue.  In this regard, the Plaintiff points to the EEOC Hearing testimony of her then-supervisor, Sandra Eddington, who testified that she received complaints about the Plaintiff's interpersonal skills but never discussed these concerns with the Plaintiff.  ECF No. 17-14, Pl. Ex. K at 66 (December 9, 2019, EEOC Hearing Tr. at 66:4–18).  Ms. Eddington also testified that she never informed the Plaintiff that she was at risk of losing her position as a building manager.  *Id.* at 18 (December 9, 2019, EEOC Hearing Tr. at 280:16–19).  The Plaintiff also states in her sworn declaration that Ms. Eddington acknowledged that certain issues related to the mid-year evaluations that the Plaintiff failed to complete were discussed and resolved, and that she considered the matter closed.  ECF No. 17-3, Pl. Ex. A (Herkert Declaration) at ¶ 44.  And so, the Plaintiff also attests she did not have alleged performance issues prior to the filing of her formal reasonable accommodation request.  Pl. Ex. A (Herkert Declaration) at ¶ 51.

Lastly, the Court observes that there is also a conflict in evidence regarding the Defendant's reason for reassigning the Plaintiff.  The Defendant states that the reason for the

14

Plaintiff's reassignment was to address poor work performance.  ECF No. 49-1 at 11.  But there is also evidence before the Court to show that the reason for this reassignment was to allow the Plaintiff to telework.  ECF No. 49-1 at 12–13; *see also* ECF No. 16-20, Def. Ex. 17 (Letter from Mr. Julian to Plaintiff); ECF No. 16-14, Def. Ex. 11 (Barr Affidavit) at 5–6.

The Plaintiff persuasively argues that the aforementioned evidence could lead a reasonable jury to believe that the Defendant's stated reason for her reassignment is a pretext for disability discrimination and/or retaliation.  Given this, the jury in this case should resolve these factual disputes.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979) (If there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.).  And so, the Court DENIES the Defendant's motion for summary judgment with regards to the Plaintiff's Rehabilitation Act discrimination and retaliation claims.

> **B.      There Are Material Facts In Dispute About Whether
>           The Defendant Provided A Reasonable Accommodation**

Turning to the Plaintiff's Rehabilitation Act reasonable accommodation claim, the Court is also satisfied that there are genuine disputes of material fact regarding whether the Defendant provided the Plaintiff with a reasonable accommodation, that preclude entry of summary judgment on this claim.  To establish a *prima facie* case of failure to accommodate under the Rehabilitation Act, the Plaintiff must show that: (1) she was a qualified person with a disability; (2) the employer had notice of the disability; (3) the plaintiff could perform the essential functions of the position with a reasonable accommodation; and (4) the employer nonetheless refused to make the accommodation.  *Hannah P.*, 916 F.3d at 337; *see also Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013).  "[R]easonable accommodations" are "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position."  29 C.F.R. § 1630.2(o)(1)(ii).

A reasonable accommodation is one that enables the employee to perform the essential functions of the position.  *See Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 580-81 (4th Cir. 2015) (holding that "[a]n employer is not required to grant even a reasonable accommodation unless it would enable the employee to perform all of the essential functions of

15

her position"). But, relevant here, the Fourth Circuit has explained that "unilateral" reassignment of an employee to a "position they do not want" may not qualify as a reasonable accommodation and that "reassignment is a last-among-equals accommodation that should be held 'in reserve for unusual circumstances.'" *Wirtes v. City of Newport News*, 996 F.3d 234, 241 (4th Cir. 2021) (cleaned up) (holding that district court erred in granting summary judgment on reasonable accommodation claim "without considering the strongly disfavored status" of involuntary transfers when disabled employee can perform essential functions of current position with or without reasonable accommodation); *see also Reyazuddin v. Montgomery Cnty., Maryland*, 789 F.3d 407, 416 (4th Cir. 2015) (internal quotations omitted) (holding that "a reasonable accommodation should provide a meaningful equal employment opportunity" and that "[m]eaningful equal employment opportunity means an opportunity to attain the same level of performance as is available to nondisabled employees having similar skills and abilities." (internal quotations omitted)).

In this case, the evidence before the Court shows that there is a genuine issue in dispute about whether the Plaintiff's reassignment to a non-supervisory position constitutes a reasonable accommodation under the Rehabilitation Act. In this regard, there is evidence in the record to show that the Plaintiff's position as a building manager was not compatible with her need to telework. ECF No. 16-4, Def. Ex. 1 (Affidavit of Ryan Felber) at 4; ECF No. 16-14, Def. Ex. 11 (Barr Affidavit) at 5–6. But the Plaintiff advances other evidence to contradict the claim that her supervisory role was not compatible with telework. For example, the Plaintiff points to evidence in the record showing that she requested and received approval to telework in her role as building manager on several occasions, while successfully performing her duties. ECF No. 16-6, Def. Ex. 3 (Affidavit of Sandra Eddington) at 4; ECF No. 16-7, Def. Ex. 4 (Eddington Deposition Transcript Excerpts) at 30:11–31:2 and 37:6–9; ECF No. 16-10, Def. Ex. 7 (Pages from SSA Document Production) at 33–34; ECF No. 17-3, Pl. Ex. A (Herkert Declaration) at ¶¶ 18, 23, 30–32, 39, 50–51 and 53; Ex. 17-8, Pl. Ex. E (PACS Performance Plan) at 85–87.

The Plaintiff also points to the EEOC hearing testimony of her supervisor, Ryan Felber, where Mr. Felber testified that he was willing to allow the Plaintiff to take Family and Medical Leave Act or leave-transfer leave, in addition to her regular telework day, while she worked as a building manager. ECF No. 17-14, Pl. Ex. K at 9-10 (Dec. 9, 2019, EEOC Hearing Tr. at 179:19–180:8). In addition, the Plaintiff points to EEOC hearing testimony showing that Sandra

Eddington successfully performed the supervisory role of a building manager from a different location, without having daily presence at the building.  ECF No. 50-2 at 3 (December 5, 2019, EEOC Hearing Tr. at 30:9–20).  And so, the jury will need to weigh and consider this evidence to determine whether the Plaintiff could perform the essential functions of the building manager position with a reasonable accommodation.

There is also contradictory evidence in the record about whether the Plaintiff wanted to be reassigned to her new position as a management analyst.  The Defendant points to an email sent by the Plaintiff after learning of her reassignment stating that: "I'm very excited having the opportunity to participate in our national leasing initiatives. I'm most grateful to you for making it happen."  ECF No. 49-1 at 6; ECF No. 16-15, Def. Ex. 12.  But the Plaintiff maintains that the evidence shows that she reluctantly accepted this reassignment, because it was a demotion.  ECF No. 17-3, Pl. Ex. A (Herkert Declaration) at ¶ 52.  In this regard, it is undisputed that, while the Plaintiff received the same pay grade, salary and benefits for this new position, the new position involved a non-supervisory role.  ECF No. 16-19, Def. Ex. 16 (Standard Form 50 showing the new position and that the Plaintiff's reassignment did not involve any change to her pay grade or salary); *see also* ECF No. 49-1 at 6–8; ECF No. 16-9, Def. Ex. 6 at 113:17–114:4 (Herkert deposition testimony acknowledging that the reassignment did not change her grade, salary, or benefits).

Given this evidence, the jury must resolve these factual disputes and determine whether the Defendant afforded the Plaintiff a reasonable accommodation.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979) (If there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.).  And so, the Court also DENIES the Defendant's motion for summary judgment with regards to the Plaintiff's reasonable accommodation claim.

### V.    CONCLUSION

For the foregoing reasons, the Court **DENIES** the Defendant's motion for summary judgment (ECF No. 49).

A separate Order shall issue.

**IT IS SO ORDERED.**


s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge